OPINION OF THE COURT
Ira Gammerman, J.
Defendant Pamukbank Tas (Pamukbank), a Turkish bank, moves for an order: (1) dismissing the complaint, on the grounds of comity, or, alternatively, on the ground of forum non conveniens, (2) annulling this court’s prior order of attachment, and (3) awarding costs and damages to defendant, including attorneys’ fees, sustained by reason of the attachment.
Plaintiff Canadian Imperial Bank of Commerce (CIBC) opposes defendant’s motion and cross-moves for an order granting summary judgment in its favor on the complaint.
Metalsac Ticaret Ve Sanayi Ltd. (Metalsac), a Turkish company, entered into an underlying sales contract with Taylor Steel, Inc. (Taylor), a Canadian corporation. Under this contract, (1) Taylor was to supply and deliver certain specified goods to Metalsac in Turkey, and (2) payment was to be made by an irrevocable deferred letter of credit to be drawn upon by Taylor after shipment of the goods. At the request of its customer Metalsac, defendant Pamukbank issued this letter of credit for $640,000 in United States dollars. Taylor was named as the beneficiary of this letter of credit. CIBC was identified as the confirming bank in the transaction. After CIBC made payment to Taylor, it was to be reimbursed by Pamukbank through Pamukbank’s Bank of New York account, located in New York City.
After shipment of the goods, Taylor presented allegedly conforming documents to CIBC. CIBC made payment to Taylor and then sought reimbursement. Subsequently, Metalsac alleged that the goods shipped by Taylor were nonconforming. Metalsac commenced an apparent breach of contract action against Taylor in Turkey seeking $583,400 in damages for the *650 nonconforming goods. In February 1993, Metalsac obtained a Turkish court order in this foreign action, which arguably preliminarily restrained payment from the Bank of New York account by Pamukbank under the letter of credit to the extent of $583,400 (i.e., the total amount sought by Metalsac against Taylor). Therefore, pursuant to this foreign restraining order, Pamukbank would only pay CIBC $56,375.04 (i.e., the monies owed that were not in dispute between Taylor and Metalsac). It is undisputed that in light of Pamukbank’s partial payment, the outstanding principal amount owed by Pamukbank on the letter of credit is $583,400. Pamukbank sought to intervene in the Turkish action and to overturn the restraining order. The Turkish court allowed Pamukbank to intervene. However, the court refused to withdraw the restraining order.
CIBC commenced this State action against Pamukbank raising two causes of action. The first is for breach of contract on the letter of credit transaction. The second cause of action is for violation of the Uniform Customs and Practice for Documentary Credits (UCP). Essentially, CIBC seeks to compel Pamukbank to meet its outstanding payment obligation on the letter of credit for the sums which CIBC paid to Taylor. This court previously granted an order of attachment prohibiting any payment on the letter of credit from the Bank of New York account.

Comity

Initially, Pamukbank contends that this complaint must be dismissed under the doctrine of comity. Specifically, Pamukbank asserts that the complaint must be dismissed because: (a) performance of the letter of credit contract was in Turkey and Canada, not New York, (b) the Turkish court had proper jurisdiction,[1] and (c) recognition of this foreign decree would not offend the public policy of New York.
*651 CIBC counters, among other things, that the foreign court had no jurisdiction to restrain Pamukbank’s obligation to pay under the letter of credit since the performance of the letter of credit transaction was in New York.
A recognition of a foreign court decree is dependent on the doctrine of comity (Hilton v Guyot, 159 US 113). While courts are not required to do so, generally, courts of this State "will accord recognition to the judgments rendered in a foreign country under the doctrine of comity absent a showing of fraud in the procurement of the foreign judgment or unless recognition of the judgment would offend a strong [public] policy of New York” (Lasry v Lasry, 180 AD2d 488, 489; see also, Matter of Gotlib v Ratsutsky, 83 NY2d 696; Greschler v Greschler, 51 NY2d 368, 376-377). The parties apparently agree that a "foreign court’s decree restraining a party to a contract cannot excuse a performance [of a contract which was] to take place in the United States * * * [the foreign decree] will [only] excuse a performance to take place within that court’s jurisdiction” (RSB Mfg. Corp. v Bank of Baroda, 15 Bankr 650, 654 [SD NY 1981] [citing 6A Corbin on Contracts § 1351]).[2] In sum, if the performance of the letter of credit contract was to take place in New York, then the foreign court order, which prohibits that performance, cannot be given effect under the doctrine of comity. Thus, here, the critical issue is where the performance of the letter of credit transaction was to take place.
Relying principally on Sabolyk v Morgan Guar. Trust Co. (1984 WL 1275 [SD NY 1984]) and RSB Mfg. Corp. v Bank of Baroda (15 Bankr 650, supra), Pamukbank claims that the parties’ consent for payment on the letter of credit to take place in New York is too insignificant under contract principles to deem it a performance in New York. In both RSB (supra) and Sabolyk (supra), the letters of credit expressly provided for payment by the advising and paying banks to be made in New York. The RSB and Sabolyk courts stated that the critical determination for the place of performance is where the letter of credit is actually issued. Thus, since in those cases, New York was not the site of issuance, it was not the site of performance *652 even though the letters of credit had provisions for payment in New York. Significantly, the RSB and Sabolyk courts held that the situation would be different if the advising and paying banks were confirming banks.
Here it is undisputed that (1) Pamukbank was a confirming bank, (2) the place for Pamukbank’s payment was to take place in New York, (3) the shipment of the goods and issuance of the letter of credit took place outside the United States, (4) the payment was to be made in United States dollars, and (5) the letter of credit, while stating the UCP governs, was silent as to the choice of law to apply. Accordingly, the court determines that, here, the place of performance of the letter of credit contract was to be New York (Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, cert denied 423 US 866 [rejecting the foreign decree, the Court held that, among other things, New York law applies where payment was to be made in New York with United States dollars and New York has vital interest to enforce international commerce transaction]; Chuidian v Philippine Natl. Bank, 976 F2d 561, 563 [citing RSB Mfg. Corp. v Bank of Baroda, supra; Sabolyk v Morgan Guar. Trust Co., supra] [designation of place of payment under a letter of credit does not alter the rule that place of performance is to be place of issuance of the letter of credit, unless the paying bank is the confirming bank]; Banco de Vizcaya v First Natl. Bank, 514 F Supp 1280, 1287 [analogizes Zeevi & Sons v Grindlays Bank (Uganda), 37 NY2d 220, supra, and rejects foreign court’s injunction since under the letter of credit, the paying bank was a confirming bank and payment was to be made in the State]). Therefore, here, the foreign court order restraining the performance of the contract (i.e., payment in New York) is to be given no effect (RSB Mfg. Corp. v Bank of Baroda, supra [under comity doctrine, foreign decree is to be given no effect if foreign court has no jurisdiction]). Pamukbank’s motion is denied to the extent it seeks to dismiss the complaint under the doctrine of comity.

Forum Non Conveniens

Alternatively, Pamukbank argues that the complaint should be dismissed on the grounds of forum non conveniens. CPLR 327 (a) provides: "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state * * * shall not preclude the court from staying or dismissing the action.”
*653 Under CPLR 327, a court is given discretionary power to dismiss an action with little or no connection with New York "where it is determined that the action, although jurisdiction-ally sound would be better adjudicated elsewhere” (Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 479, cert denied 469 US 1108). In determining whether to retain jurisdiction, the court must consider a number of factors. While no one factor is determinative, these factors include the burden on New York courts, the potential hardship to defendant, the unavailability of an alternative forum in which the plaintiff may bring suit, whether both parties to the action are nonresidents, the situs of the transaction and the location of documents and witnesses (supra).
Considering all of the relevant factors, this court finds that the causes of action in this action should be heard in New York. First, the performance of the letter of credit transaction was to be in New York (see, comity discussion, supra). Thus, Pamukbank’s contention that the complaint should be dismissed because New York has a very minor role in the letter of credit transaction is unavailing (compare, Islamic Republic of Iran v Pahlavi, 62 NY2d 474, supra [party’s New York bank account had nothing to do with the litigation commenced in New York]). Second, New York has a substantial interest in this international letter of credit transaction (Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, 227, supra [New York law will govern the claims in this action involving international commerce transaction]). Also, the pending Turkish action concerns an independent contract action between the customer and beneficiary on the letter of credit. (See, summary judgment discussion, infra.)
In sum, the forum non conveniens argument is unavailing, and, thus, defendant’s motion seeking to dismiss the complaint is denied in its entirety. Also, defendant’s motion to annul the attachment and costs for that attachment is also denied.

Summary Judgment

CIBC cross-moves for summary judgment in its favor on the complaint. Pamukbank argues, among other things, that summary judgment in favor of CIBC is patently improper since issue has not yet been joined.
Generally, a motion for summary judgment cannot be granted if it is made prior to joinder of issue (Valentine Tr. v Kernizan, 191 AD2d 159). However, CPLR 3211 (c) empowers a court, upon adequate notice to the parties, to treat a CPLR *654 3211 motion as one for summary judgment. Here, the parties were duly notified of the court’s intention and given an opportunity to respond. Thus, this court will now consider whether summary judgment on the complaint is appropriate.
The letter of credit, which provided for payment in New York in United States dollars, was issued expressly subject to the UCP. However, the letter of credit is silent as to what law governs its terms. The UCP is "an internationally accepted codification of banking practice and custom regarding letters of credit” (Ross Bicycles v Citibank, NYLJ, June 14, 1994, at 22, col 2 [Cohen, J.]). When the UCP is incorporated into a letter of credit, the UCP provisions have binding force (supra). However, when the UCP is silent or ambiguous, analogous UCC provisions may be utilized if consistent with the UCP (First Commercial Bank v Gotham Originals, 64 NY2d 287; see also, United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, rearg denied 41 NY2d 901 [in absence of conflict with UCP, courts may still look to New York UCC law]). Thus, New York UCC law can be applied since New York has paramount interest in this litigation (see, e.g., Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d 220, 226-227, supra).
It is well established in New York and under the UCP that the issuer’s (i.e., Pamukbank) obligation to pay under a letter of credit is separate and independent from any underlying contractual obligations of the customer (i.e., Metalsac) and the beneficiary (i.e., Taylor) as well as from any obligation of the issuer to its customer under the agreement (First Commercial Bank v Gotham Originals, supra, at 294-295; Ross Bicycles v Citibank, supra). Under the general rule, the issuer must honor a demand for payment which complies with the terms of the letter of credit regardless of whether the goods conform to the underlying contract of sale (First Commercial Bank v Gotham Originals, supra; UCC 5-114[1]). Thus, Pamukbank’s obligation to pay is fixed upon presentation of the drafts and the documents specified in the letter of credit. Any dispute on the underlying transaction is of no consequence. Here, no dispute exists that the documents were presented for payment and CIBC made payment upon proper checking. Therefore, under the general rule, Pamukbank’s obligation to pay is fixed.
However, UCC 5-114 (2) provides a limited exception to this rule of independence (First Commercial Bank v Gotham Originals, 64 NY2d 287, 295, supra). Section 5-114 (2) permits a court to enjoin payment if fraud in the underlying transaction exists (United Bank v Cambridge Sporting Goods Corp., 41 *655 NY2d 254, 261, supra; see also, Barclay Knitwear Co. v King’swear Enters., 141 AD2d 241, 245, lv denied 74 NY2d 605). Payment may only be enjoined if the fraud is intentional, not where the party merely alleges improper performance on the underlying transaction or breach of warranty (United Bank v Cambridge Sporting Goods Corp., supra). Thus, unless fraud in the underlying transaction is shown here, the dispute on the underlying transaction is of no consequence to Pamukbank’s obligation to pay.
Pamukbank now makes the conclusory allegation that Metalsac raises a fraud cause of action in its foreign action against Taylor. However, here, no evidence of fraud is presented. It is clear that Metalsac’s foreign action is not one of fraud, but merely one of breach of performance on the underlying contract (United Bank v Cambridge Sporting Goods Corp., 41 NY2d 254, supra). Thus, Pamukbank is bound by its contractual obligation to pay under the letter of credit, and this court will not enjoin such payment in the absence of any fraud.
Lastly, article 21 of the UCP provides that the issuing bank shall be responsible for any loss of interest if reimbursement is not provided on first demand (Ross Bicycles v Citibank, NYLJ, June 14, 1994, at 22, col 2 [Cohen, J.], supra [citing Optics Labs. Corp. v Savannah Bank, 816 F Supp 898, 909]). It is undisputed that payment was due on June 4, 1993.
Accordingly, plaintiff CIBC shall recover the balance of the letter of credit in the amount of $583,400 with interest thereon from June 4, 1993.
Defendant’s motion is denied in its entirety, plaintiff’s cross motion is granted and the clerk is directed to enter judgment in plaintiff’s favor against defendant in the sum of $583,400 with interest thereon from June 4, 1993.

. The parties submit two opposing affidavits from alleged experts on the laws of Turkey. CIBC’s affidavit contends that the foreign order, which speaks of enjoining "transfer abroad” on the letter of credit, does not prevent payment from the bank account located in New York City. The rationale is that since the money is already abroad, payment from that account would not violate the foreign court’s restraining order. On the other hand, Pamukbank’s expert affidavit contends that under Turkish law, the restraining order prevents payment from the aforementioned account. It is unclear which interpretation is correct. However, CIBC concedes that an argument can be made that the foreign order restrains the Bank of New York account. For purposes of deciding this motion, this court assumes that the language in the foreign order bars such payment. Thus, if the foreign court has jurisdiction, then the doctrine of comity may be applicable to dismiss the complaint.

. CIBC expressly asserts that no effect is to be given to the foreign order if performance of the letter of credit transaction was to take place in New York. Pamukbank’s focus is merely on proving that the performance was not in the United States. Pamukbank impliedly concedes that if the performance was in New York, CIBC’s lack of jurisdiction assertion would be correct.