FERGUSON CONTRACTING COMPANY, Appellant, *v.* STATE OF NEW YORK, Respondent.

Contract — state — provision, in contract for construction of portion of Barge canal, for additions and changes in plans and specifications — when refusal by contractor to comply with alteration order constitutes breach of contract — practical construction put upon contract by parties — when claim against state properly dismissed.

1. Where, under the terms of a contract for the construction of a portion of the Barge canal, it was " mutually agreed that the state reserves the right, until the final completion and acceptance of the work, to make such additions to or changes in the plans and specifications covering the work as may be necessary, and the contract shall not be invalidated thereby," the state had the right to make an alteration order and require the contractor to do the extra work called for at the unit prices specified in the contract where all of the work called for was of the same general character for which the contractor has submitted a unit price.

2. Where the construction thus put upon the contract is supported by the practical construction the parties themselves placed upon it

in six prior alteration orders, the contractor was bound to do the work at the unit price specified, and when it refused to perform the work and furnish the materials called for it broke the contract and the state was justified in declaring it canceled. A claim against the state upon the ground that the state, by its alteration order, had broken the contract was, therefore, properly dismissed.

*Ferguson Contracting Co.* v. *State of New York*, 202 App. Div. 27, affirmed.

(Argued October 25, 1923; decided December 27, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 25, 1922, affirming a judgment of the Court of Claims dismissing the claim of the claimant herein.

*Brainard Tolles* and *Richard E. Dwight* for appellant. The state's demand for the doing of additional concrete work was coupled with an untenable condition which made it ineffective as the exercise of an option. (*Sun P. & P. Assn.* v. *Remington P. & P. Co.*, 235 N. Y. 338; *Barrow Steamship Co.* v. *Mexican Central R. Co.*, 134 N. Y. 15; *Myers* v. *Smith*, 48 Barb. 614; *Myers* v. *Trescott*, 59 Hun, 395; *Sidney Glass Works* v. *Barnes & Co.*, 86 Hun, 374; *Mahar* v. *Compton*, 18 App. Div. 536; *Potts* v. *Whitehead*, 23 N. J. Eq. 512; *Lyman* v. *Robinson*, 14 Allen, 242; *Corcoran* v. *White*, 117 Ill. 118; *Phœnix I. & S. Co.* v. *Wilkoff Co.*, 253 Fed. Rep. 165.)

*Carl Sherman, Attorney-General* (*Wilber W. Chambers* of counsel), for respondent. The state was clearly entitled to prescribe the changes provided in alteration No. 7 under the precise terms of the contract pursuant to which this construction work was under progress. (*Clark* v. *Mayor, etc.*, 4 N. Y. 338; *Daly* v. *Bush T. Ry. Co.*, 129 Fed. Rep. 513; *Kingsley* v. *City of Brooklyn*, 5 Abb. [N. C.] 1; *Kinser Const. Co.* v. *State*, 204 N. Y. 381; *People ex rel. Graves* v. *Sohmer*, 207 N. Y. 450.)

McLAUGHLIN, J. On the 3d of April, 1905, the Ferguson Contracting Company entered into a contract with

the state of New York, known as contract No. 2, to construct a portion of the Barge canal provided for under the Barge Canal Act (Laws of 1903, chap. 147). The portion of the canal to be constructed by it extended from the Mohawk river near Waterford westerly ninety one-hundredths of a mile.

The contract provided generally for excavating, constructing supports for the sides of the canal, and the construction of two locks, Nos. 2 and 3, with side walls and floors of concrete. The amount of estimated work, with the prices stipulated in the contract, plans and specifications made a part of it, including alteration orders 1 to 7, both inclusive, amounted to $946,105.76. The amount of work, excluding alteration order No. 7, was $906,896.26. Alteration order No. 7 added work amounting to $74,848.90, and decreased work amounting to $35,639.49, so that there was an actual increase in the work, by reason of this order, of $39,209.50. The contractor entered upon and continued performance of the work as called for until the 27th of April, 1909, when it refused to proceed further.

Section 7 of the contract provided as follows: " It is mutually agreed that the state reserves the right, until the final completion and acceptance of the work, to make such additions to or changes in the plans and specifications covering the work as may be necessary, and the contract shall not be invalidated thereby, and no claim shall be made by the contractor for any loss of profits because of any such change or by reason of any variation between the quantities of the approximate estimate and the quantities of the work as done."

Thereafter, acting under the provision of the contract quoted, the state, from time to time, made certain alterations which are designated in the record as alteration orders Nos. 1 to 7, both inclusive. The contractor acquiesced in all of the alterations except No. 7, and performed the work called for without objection, at the

unit prices specified in the contract. When alteration order No. 7 was made, however, it refused to proceed further, or to recognize the right of the state to make the changes proposed. On the 27th of April, 1909, it accordingly wrote the state engineer as follows: " Replying to yours of the 24th inst., directing us to progress with the work of construction of contract No. 2 under the so-called alteration No. 7, which has not been consented to or in any way approved by us, we write to say we must decline to recognize said alteration as valid. We have had the opinion of the best legal and engineering talent available on this subject and they advise us that this change is such a radical one as to be substantially the substitution of a new contract in place of our original contract. We were willing to, but were not permitted to proceed with the original contract and we regard ourselves released from all obligations under said contract and we shall look. to the State for damages for the breach."

Therefore, the state, acting under the power given to it by section 7 of chapter 147 of the Laws of 1903, and by section 12 of the contract under consideration, in the form and manner provided therein, canceled the contract and directed the remaining part of the work under it to be readvertised and relet in accordance with the provisions of the statute. A new contract was then entered into for the completion of the work. After the new contract was let, the claim in question, amounting to upwards of $400,000, was presented against the state, on the ground that it, by alteration order No. 7, had broken the contract.

The claimant, in the claim filed, alleged, in substance, that alteration order No. 7 constituted a radical change in the plans and specifications of the work remaining to be done under contract No. 2, thereby departing radically from the general character and type of the work as originally contemplated; that the claimant refused to recognize such radically proposed alterations as binding,

and that the state, because of such refusal and for no other cause, canceled the contract and declined to permit claimant to proceed therewith. The claim as filed was subsequently amended so as to allege that the state, by requiring the additional work, called for by alteration order No. 7, at unit prices, relieved the contractor from further performance.

In 1910 a trial was had as to the validity of the claim thus presented. The Court of Claims dismissed the claim. It found that alteration order No. 7 contained no item for which a unit price was not stipulated in the contract, and no work of a different kind from that called for by it. It also found, to which no exception was taken, as follows:

" 9. Alteration No. 7 did not change the nature of the work called for by the contract or substantially change the cost of the work.

" 10. The claimant refused to accept said alterations and refused to enter into an agreement therefor, on the ground that they constituted a fundamental change in the contract, and amounted to a breach of the contract by the State.

" 11. The claimant refused to continue the work under the contract after the submission of said Alteration Order No. 7, treating the order as a breach of the contract by the State, and thereby was guilty of a breach of its contract."

And as conclusion of law:

" 1. Alteration Order No. 7 did not change the nature or substantially affect the cost of the contract and was not a fundamental change of the contract."

These findings were unanimously affirmed by the Appellate Division.

The question presented by the appeal is whether the state had the right to make alteration order No. 7 and require the contractor to do the extra work called for thereby, at the unit prices specified in the contract. I

think it had. All of the work called for was of the same general character for which the contractor had submitted a unit price. If the changes had called for new work for which no unit price had been specified in the contract, a different question would be presented. But they did not. The changes, considering the amount and character of the work, were but matters of detail which the state had the right to make under the clause of the contract to which reference has before been made. (*Daly* v. *Busk Tunnel Ry. Co.,* 129 Fed. Rep. 513; *Kinser Construction Co.* v. *State of N. Y.,* 204 N. Y. 381.) The principal changes were the substitution of concrete lining in place of puddled lining; concrete docking in place of wooden docking; and additional embankment construction. These, and other minor changes, did not work a substantial change in either character or cost of the work. The building of embankments and the construction of concrete work were among the chief items, both in quantity and price, specified in the contract and were covered by unit prices. It could not, with entire accuracy, be determined, considering the amount and character of the work, just what would be necessary to be done when the contract was made. This was recognized by both parties. Hence the provision that changes or alterations might be made without invalidating the contract. In this connection it is quite significant that prior to the making of alteration order No. 7, six other alteration orders (which called for work and materials largely in excess of what was called for by order No. 7) had been made and in each instance acquiesced in by the contractor and not even a suggestion made by it that the unit prices specified in the contract did not apply.

The construction thus put upon the contract is supported by the practical construction the parties themselves placed upon it in the six prior alteration orders. The contract fixed unit prices for each class of work called for in these alteration orders, including order No. 7.

The contractor had agreed that the state could make such additions to or changes in the plans and specifications covering the work as might be necessary and that if such changes were made they should not affect the contract, and that no claim should be made by the contractor " for any loss of profits because of any such change or by reason of any variation between the quantities of the approximate estimate and the quantities of the work as done." It is difficult to see how the intention of both parties to apply the unit prices to the work arising from alterations could be more clearly expressed. The chief increases under alteration order No. 7 were embankments and second-class concrete. The unit price provided in the contract for embankments was twelve cents per cubic yard. This price was recognized and acted upon in every alteration order, except the 7th, where embankment was involved, viz., orders Nos. 1, 3, 4 and 5. The unit price specified in the contract for second-class concrete was five dollars and fifty cents per cubic yard, and this price was recognized and acted upon in alteration orders Nos. 1 to 6, both inclusive. Five of these alteration orders were agreed to in writing. The sixth, while not agreed to in writing, was, nevertheless, acquiesced in, and the work performed under the unit price specified in the contract.

Under the terms of the contract, as well as the construction placed upon it by the parties themselves, the work specified in alteration order No. 7 had to be performed by the claimant at the unit price specified, and when it refused to perform the work and furnish the materials called for, it broke the contract and the state was justified in doing what it did.

The judgment of the Appellate Division should, therefore, be affirmed, with costs.

HOGAN, POUND and CRANE, JJ., concur; HISCOCK, Ch. J., CARDOZO and ANDREWS, JJ., dissent.

Judgment affirmed.